<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| KENWORTH LAURIER, | |
| Plaintiff, | Case No. 3:15-cv-6043 (BRM) (TJB) |
| v. | **OPINION** |
| STEPHEN D'ILIO, et al., | |
| Defendant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendants Officer Stephen D'Ilio ("D'Ilio"), George O. Robinson ("Robinson") Senior Corrections Officer N. Wright, Senior Corrections Officer T. Wilson and Sargent R. DeLaRosa (collectively, "Defendants") opposed motion for summary judgment. (ECF No. 69.) Having reviewed the submissions filed in connection with the motion, and having declined to hold oral argument pursuant to Fed. R. Civ. P. 78, for the reasons sets forth below, and for good cause appearing, Defendants' motion for summary judgment is **GRANTED in part**, and **DENIED in part**.

**I. BACKGROUND**

   **A. Factual Background**

This action arises out of an incident that occurred on August 24, 2013, while Kenworth Laurier ("Plaintiff") was a prisoner at the New Jersey State Prison ("NJSP"). (Compl. (ECF No. 1) ¶¶ 4, 20.)

> [Plaintiff], who is gay, was previously assigned to a "single-man cell," but was later reassigned to a two-person cell on July 1, 2013,

by order of the SID[1], which is overseen by D'Ilio. However the Institutional Classification Committee ("ICC") generally makes decisions about prisoner housing and is overseen by Defendant Robinson. Prior to his placement in the double cell, "no screening was done by SID or ICC to ensure that [Plaintiff] and his cellmate would be compatible. Specifically, no process was in place to identify gay and homophobic inmates and to keep them separate." Laurier and his first cellmate had no issues, but that cellmate was transferred in July or August 2013.

However, [Plaintiff's] second cellmate, Inmate Robinson confronted [Plaintiff] about his homosexuality, which [Plaintiff] did not deny. Although Inmate Robinson initially displayed no animosity toward [Plaintiff], he began to make repeated requests to Wright and Wilson to be reassigned. In the middle of August 2013, Inmate Robinson told Wright that [Plaintiff] "would have physical problems" if Inmate Robinson was not reassigned to a new cell, but Wright ignored Inmate Robinson's threats. On the day of the attack, Inmate Robinson again asked Wright to move him from the cell, and warned that "it's going to turn physical," but Wright ignored Inmate Robinson's threats and told him "to do what you got to do." Inmate Robinson then stormed back to the cell he shared with Laurier.

When Laurier returned from the "mess area" to his cell, he was brutally attacked by Inmate Robinson. Just prior to the attack, Inmate Robinson heated a cup of boiling water with an emersion [sic] heat coil, otherwise known as a "stinger."[2] Inmate Robinson threw the boiling water at [Plaintiff]. Inmate Robinson also punched [Plaintiff], hit him with computer equipment, and tried to strangle him with a cable wire. The attack lasted fifteen minutes before a "code 33" was called.

As of the date of the attack, general population inmates at NJSP "were permitted by [] D'Ilio" to have stingers and "there was no limit on the number of stingers an inmate could possess. Nor was there any restriction [on] or supervision of an inmate's use of a stinger." However, inmates in more restrictive housing units were not permitted by D'Ilio to use or possess stingers. Inmates in other prisons were not permitted to have stingers at all during the relevant time period. Despite the dangers posed by stinger[s], D'Ilio allowed its use and possession, while at the same time prohibiting the

---

[1] Plaintiff's deposition testimony provides that "SID" stands for Special Investigation Division. (ECF No. 69-6 at 30.)

[2] "A stinger is a heated immersion coil used to heat water []." *Sierra v. N.J. Dept. of Corr.*, A-4904-13T2, 2015 WL 3887084 at *2 (N.J. Super. Ct. App. Div. May 26, 2015).

> possession and use of commonplace items, such as pens, toothbrushes and razors. On May 15, 2014, D'Ilio prohibited the use and possession of stingers.
>
> After the assault, [Plaintiff] was handcuffed by order of DeLaRosa, despite the fact that he had visible burns on his hands and wrists. Thereafter, [Plaintiff] was transported to the prison clinic and later to an outside hospital where he was treated for burn injuries and a cut on his head. On his second day at the hospital, [Plaintiff] was served with disciplinary charges stemming from the incident and placed on prehearing detention ("PHD status").
>
> DeLaRosa requested that [Plaintiff] be placed on PHD status, and D'Ilio, who had the power to review the PHD placement, "failed to intervene" in the placement. Moreover, "Defendant Robinson, who was the on-call administrator on August 24, 2013, and was fully briefed about ["Plaintiff's] circumstances, failed to order [Plaintiff's] removal from PHD." An inmate on PHD status is placed in solitary confinement and is only permitted to leave his cell for a ten-minute shower each day. The basis for [Plaintiff's] placement on PHD status was the belief that he "will attempt to harm, threaten, or intimidate potential witnesses or that the inmate will attempt to organize or encourage others" to do.
>
> Because of [Plaintiff's] PHD status he was strip-searched twice, which caused his wounds to be exposed. After the strip search, [Plaintiff] was placed in a "filthy isolation cell," which was freezing cold and contained only a three-inch mat for a bed. Only after several hours, was [Plaintiff] given two sheets and a blanket, but no pillow. [Plaintiff] had no toiletries and the toilet could not be flushed. [Plaintiff] feared his wounds would become infected because during this period, his wounds were not cleaned and or bandaged, contrary to the hospital discharge orders, and he was not permitted to leave the cell for any reason.
>
> The following day, at his disciplinary hearing, [Plaintiff] was found not guilty of administrative charges against him. Following the not guilty finding, he was moved into a clean cell in the general population, where his wounds were cleaned and his bandages changed as directed by the hospital's discharge orders.

(ECF No. 34 at 2-4.)

### B. Procedural Background

On August 6, 2015, Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, alleging a myriad of constitutional violations by Defendants. (ECF No. 1.) Plaintiff is seeking damages and declaratory relief. (*Id.*) The Court dismissed the official capacity claims for damages against all defendants. (ECF No. 5.) After considering the Defendants' motion to dismiss, on January 31, 2018, the Court issued an order dismissing Plaintiff's Eighth Amendment claims for failing to have a policy/procedure to screen and separate homophobic and gay inmates as well as his Eighth Amendment claims for inadequate medical care as to Defendants D'Ilio and Robinson, without prejudice. (ECF No. 34 at 15.) On May 6, 2019, the Court issued an order permitting Defendants to depose Plaintiff by May 31, 2019. (ECF No. 52). On October 8, 2019, the Court issued an order permitting Defendants to meet Plaintiff at his current place of confinement in order to allow him an opportunity to view his SID interviews.[3] (ECF No. 68.) Defendants now move for summary judgment. (ECF No. 69.)

## II. LEGAL STANDARD

### A. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it

---

[3] Defendants filed a letter with the Court on November 27, 2019, indicating that they received a letter from Plaintiff requesting copies of transcripts of his August 24, 2013 and October 3, 2013, videotaped interviews. However, Defendants submit they are not aware of such transcripts. (ECF No. 74.)

has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence

and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

### B. Section 1983 Actions

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of his constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

Therefore, to state a claim for relief under Section 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

### III. DECISION

Defendants submit that they are entitled to summary judgment on Plaintiff's remaining claims. (*See* ECF No. 69-3 at 9.) First, Defendants argue Plaintiff has not established that

Defendants Wilson or Wright failed to protect him in violation of the Eighth Amendment. (*Id.* at 9-11.) Second, Defendants argue Plaintiff has not established NJSP's policy allowing inmates to possess stingers does not rise to the level of deliberate indifference. (*Id.* at 12-13.) Lastly, Defendants argue Plaintiff has not established Defendant DeLaRosa was deliberately indifferent to his medical needs. (*Id.* at 13-16.)

### A. Defendants Wilson and Wright's Failure to Protect Plaintiff

Counts seven and eight of Plaintiff's complaint allege Defendants Wilson and Wright's failure to protect in violation of the Eighth Amendment. (ECF No. 1 ¶¶ 60-63.) Defendants argue that Plaintiff cannot show that both Wilson and Wright, who were both senior corrections officer during the relevant time periods, were aware of any risk to plaintiff from his cellmate, Kyrene Robinson. (ECF No. 69-3 at 10-11.) Defendants further submit that Plaintiff's deposition testimony supports their premise that Plaintiff was unaware of any hostility from Robinson, as a result of Plaintiff's sexuality or for any other reason. (*Id.* at 11.) Defendants also argue that the interactions between Plaintiff and his cellmate would not have allowed either Wright or Wilson to have knowledge of any information that Robinson posed a threat to Plaintiff's safety. (*Id.*)

To prevail on an Eighth Amendment failure to protect claim, a plaintiff is required to show that (1) he is incarcerated under conditions posing a substantial risk of serious harm (the objective element); and (2) prison officials acted with deliberate indifference, i.e., that prison officials knew of and disregarded an excessive risk to inmate health or safety (the subjective element). *See Farmer v. Brennan,* 511 U.S. 825, 833–34, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *see also Griffin v. DeRosa,* 153 F. App'x 851 (3d Cir. 2005).

In his opposition to the motion for summary judgment, Plaintiff submits certifications from three NJSP inmates, Stacey Faulcon, Jeffrey Baker and Kuasheim Powell. (ECF No. 71-2 at 3-5,

7

10-11.) Notably, Jeffrey Baker provides that a couple of months after the incident between Plaintiff and Robinson, he overheard Defendant Wright say to another officer "[h]is cellmate, Robinson, told me something bad was going to happen if I didn't move him," shortly after Plaintiff Laurier left the area. (*Id.* at 5 ¶ 5.) Additionally, Kuasheim Powell certifies that shortly before the incident between Plaintiff and Robinson, he heard Robinson ask Defendant Wright to be moved to another cell because he did not want to be in cell with an individual everyone knew to be gay and that he would have physical problems with Laurier if he were not moved soon. (*Id.* at 10 ¶ 3.) "Officer Wright told Robinson, 'talk to me on Saturday.' To which Robinson responded, "that's what you said last week." (*Id.*)

The parties conflicting facts about Defendant Wright's knowledge of Robinson's plan to harm Plaintiff if he was not moved, presents a factual issue that must be resolved by a fact-finder. *See Razak v. Uber Technologies, Inc.*, 951 F.3d 137, 145 (3d Cir. 2020). Therefore, summary judgment is not appropriate as it relates to the failure to protect claim against Defendant Wright. However, although Defendants also name Defendant Wilson in their motion for summary judgment, they do not present any supporting facts or arguments. Neither does Plaintiff present any facts or arguments about Defendant Wilson's awareness of a risk of harm to Plaintiff. In fact, Plaintiff only argues "a genuine dispute exists over whether Defendant Wright knew of and disregarded an excessive risk to Plaintiff's safety." (ECF No. 71 at 6.) Consequently, the motion for summary judgment is denied with respect to Defendant Wright and granted with respect to Defendant Wilson.

### B. Defendant D'Ilio's Deliberate Indifference

Defendants next submit that Plaintiff has not shown that Defendant D'Ilio was deliberately indifferent to a risk of harm by allowing NJSP inmates to possess stingers. (ECF No. 69-3 at 12.)

In support of their argument, Defendants cite to Plaintiff's deposition testimony where he stated he used stingers while housed at NJSP and he was not aware of Defendant D'Ilio having any knowledge of a prisoner planning to use a stinger in a physical attack. (*Id.* at 12-13.)

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer,* 511 U.S. at 837.

There are "two general ways" in which a supervisor-defendant may be liable: (1) where the supervisor established a policy, custom, or practice that caused the harm; or (2) where the supervisor personally participated in the constitutional violation. *Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, ---- U.S. ----, 135 S.Ct. 2041, 2043, 192 L.Ed.2d 78 (2015). These two general types of supervisory liability are as follows:

> First, liability may attach if they, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J..M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in the subordinate's unconstitutional conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1190-91 (3d Cir. 1995)). "Failure to" claims-failure to train, failure to discipline, or as in the case here, failure to supervise-are generally considered a subcategory of policy or practice liability.

*Barkes*, 766 F.3d at 316.

Plaintiff alleges that Defendant D'Ilio "implemented a policy that allowed Kyrene Robinson to own, possess, and use without supervision a stinger, which Robinson used to boil water that he then threw on Plaintiff." (ECF No. 71 at 7.) Plaintiff submits that D'Illio's policy allowed inmates in general population such as Robinson to possess stingers while it prohibited

9

stingers to inmates in medical and segregation units and he ultimately banned the use of all stingers at NJSP after the incident between Plaintiff and Robinson. (*Id.* at 7-8.)

The parties do not dispute that stingers were allowed at NJSP during the relevant time period and that they were eventually prohibited to all prisoners within a few months after the incident. Nor do the parties dispute that inmates in certain housing units, such as medical and segregation units, were prohibited from possessing stingers. In his answers to Plaintiff's interrogatories, Defendant D'Ilio provided, inmates in Administrative Segregation "have a limited canteen list which prevents those inmates from purchasing stingers." (ECF No. 71-2 at 15.) D'Ilio also provided, inmates in the Residential Treatment Unit and Traditional Care Unit were prohibited from possessing stingers "due to mental health and related safety concerns." (*Id.* at 16.)

While Plaintiff experienced an unfortunate physical attack by another inmate who employed a stinger to burn him with hot water, the facts before the Court do not demonstrate Defendant D'Ilio's policy was in place in spite of his knowledge of the excessive harm that could be potentially caused by stingers. As Defendants point out, Plaintiff testified that he too used stingers in the past for their ordinary use, not to boil a liquid to be used to inflict physical harm on anyone. Nor was he aware of D'Ilio being aware of an inmate planning to use a stinger to boil water to attack another person. While the prison has prohibited other common objects that could be fashioned as a weapon, such as pens and toothbrushes, the record does not reflect that the prison had any knowledge of stingers being used at NJSP for any purpose other than what they were designed for. Another district court in this circuit considered a similar question, and found that a "reasonable jury could find that the prison's failure to control access to stingers, which can be used as dangerous weapons, amounted to deliberate indifference." *Muse v. City of Phila.*, Civ. Action No. 05-1554, 2006 WL 8459389 at \*8 (E.D. Pa., July 31, 2006). The Court's holding in that case,

however, hinged on the history of inmate attacks using stingers at that particular facility and the supervisory defendants' recollection of at least ten of these prior attacks. *Id.*

The Court has no difficulty reconciling NJSP's then-policy of allowing inmates in general population to possess stingers while prohibiting them to inmates in medical units or Administrative Segregation. Defendant D'Ilio's explanation for the distinction suggests specific concerns for inmates in those units due to medical or other concerns, rather than as a response to a history of violent stinger-related attacks at NJSP. Moreover, the Court does not consider the prison's actions in the aftermath of Robinson's attack on Plaintiff, namely prohibiting stingers to all inmates, as factual evidence of D'Ilio promoting a policy with the knowledge that it posed a "substantial risk of serious harm" prior to the attack on Plaintiff.

Consequently, the Court finds there is no genuine issue of a material fact for trial. Defendants motion is granted as it relates to Plaintiff's deliberate indifference claim against D'Ilio.

### C. Defendant DeLaRosa's Deliberate Indifference

Finally, Defendants submit that Plaintiff has not shown that Defendant Sgt. DeLaRosa's decision to place Plaintiff in PHD status was indicative of his deliberate indifference to Plaintiff's medical needs. (ECF No. 69-3 at 13-16.)

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble,* 429 U.S. 97, 103–05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle,* 429 U.S. at 104; *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer,*

511 U.S. at 837. A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle,* 429 U.S. at 104–05; *see also Coudriet v. Vardaro*, 545 F. App'x 99, 104 (3d Cir. 2013) (citing *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001)).

> "Deliberate indifference," therefore, requires "obduracy and wantonness," *Whitley v. Albers,* 475 U.S. 312, 319, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986), which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk. *See Farmer v. Brennan,* 511 U.S. 825, 842, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994) Moreover, "[i]t is well-settled that claims of negligence or medical malpractice, without some more culpable state of mind, do not constitute "deliberate indifference."

*Rouse*, 182 F.3d at 197.

At his deposition, Plaintiff testified that he was returned to NJSP and placed in PHD status after he was treated offsite at Helene Fuld Trauma Center. (ECF No. 69-6 at 50-51.) The parties do not dispute that Plaintiff was in PHD status for two days from August 27, 2013, until August 29, 2013. (ECF No. 69-2 ¶ 21.) In his complaint, Plaintiff alleged that he was strip-searched twice because he was in PHD status. (ECF No. 1 ¶ 40.) He alleged that the bandage covering his chest wounds was removed. (*Id.*) He describes the cell as being "filthy," extremely cold, lacking a bed, and toiletries as well as being the type of cell that is typically assigned to inmates on suicide watch. (*Id.* ¶ 41.) He also alleges that he was concerned his burns wounds would become infected as his wounds were not being cleaned and bandages were not being changed daily as ordered. (*Id.* ¶¶ 41, 43.)

According to Defendants' Statement of Undisputed Material Facts, Plaintiff was evaluated by medical providers each day that he was in PHD status. (ECF No. 69-2 ¶ 22.) Moreover, Plaintiff's own deposition testimony provides that he still had the bandages on his final day in PHD status. (ECF No. 69-6 at 52.)

Notwithstanding, Plaintiff's overall discomfort in his cell while he was in PHD status, his allegations do not amount to a deliberate indifference of his medical needs. *See Spruill v. Gillis*, 372 F.3d 218, 237 (3d Cir. 2004) (internal quotation marks and citations omitted) ("The facts as [Plaintiff] describes them simply do not amount to the *MCCII* examples of denying reasonable requests for medical treatment . . . expos[ing] the inmate to undue suffering or knowledge of the need for medical care coupled with an intentional refusal to provide that care.") Moreover, Plaintiff was being evaluated by medical providers daily, even when he was in PHD status.

Plaintiff has not provided any facts or arguments to rebut Defendants' argument, nor has he responded to this argument at all, for that matter. Consequently, the Court finds there is no genuine issue of a material fact for trial. Defendants motion is granted as it relates to Plaintiff's deliberate indifference claim against DeLaRosa.

## IV. CONCLUSION

Accordingly, Defendants' Motion for Summary Judgment (ECF No. 69) is **GRANTED** as it relates to the deliberate indifference claims against Defendants D'Ilio, and DeLaRosa as well as the failure to protect claim against Wilson. Defendants' Motion for Summary Judgment (ECF No. 69) is **DENIED** as it relates to the failure to protect claim against Defendant Wright. An appropriate order will follow.

Dated: July 10, 2020

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**